IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 09-00129-02 JMS |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | JAMES ALAN DUARTE'S MOTION |
| vs. | ) | FOR A NEW TRIAL |
| | ) | |
| JAMES ALAN DUARTE,    (02) | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANT JAMES ALAN DUARTE'S MOTION FOR A NEW TRIAL

After being convicted by a jury of two counts of wire fraud and two counts of mail fraud, Defendant James Alan Duarte ("Duarte") filed a timely motion for new trial ("Motion"), arguing that the jury's verdict against him is "against the weight of the evidence, resulting in a miscarriage of justice." Motion at 2. After reviewing the parties' briefing, and taking into consideration the evidence introduced at trial, the court DENIES the Motion.

### I. BACKGROUND

**A.    Factual Background**

On March 24, 2009, a grand jury returned a nine-count Indictment against Duarte and his co-defendant Kevyn Paik ("Paik"). Duarte and Paik were jointly charged in counts 1-3 with wire fraud (18 U.S.C. § 1343), and in counts 4-7

with mail fraud (18 U.S.C. § 1341).[1]

The Indictment alleges that Duarte and Paik engaged in a scheme to defraud and to obtain money from the United States Fish & Wildlife Service by obtaining contract work at the Hanalei National Wildlife Refuge located on Kauai, Hawaii by making materially false and fraudulent pretenses, representations, and promises, and by omissions of material fact. The charges allege that Duarte and Paik (who was an employee of the Fish & Wildlife Service) devised a scheme to use "straw contractors" to obtain contract work at the refuge's "Pond C" in an effort to hide Paik's involvement in the contract work. Specifically, the Indictment alleges that Duarte and Paik used two separate straw contractors, Samuel K. Thronas, Inc. ("Thronas") and Kauai Fire Protection, Inc., also referred to as K.F.P., to enter into contracts with Ducks Unlimited, Inc., an entity under contract with the Fish & Wildlife Service for the renovation and improvement of Pond C. The Indictment further claims that Paik was required to disclose his financial interest in the Pond C work and obtain approval to engage in the contract work, but failed to do so.

A jury trial was held from March 30, 2010 until April 22, 2010. On

---

[1] Paik alone was charged in counts 8-9 with engaging in a criminal conflict of interest (18 U.S.C. § 208).

April 26, 2010, the jury acquitted both Defendants of all counts concerning the Thronas contract (counts 1, 4, and 5) and convicted both Defendants of the counts concerning the Kauai Fire Protection contract (counts 2, 3, 6, and 7).[2]

The jury was instructed that, in order to convict Duarte of wire or mail fraud, the government must prove the following beyond a reasonable doubt:

> First, the defendant devised, or participated in, a scheme or plan for obtaining money or property by making false representations or statements, with all of you agreeing on at least one particular false representation or statement that was made;
>
> Second, the defendant knew that the representations or statements were false;
>
> Third, the representations or statements were material, that is they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; [and]
>
> Fourth, the defendant acted with the intent to defraud[.][3]

The jury was further instructed, in part, that "[t]he term 'false representations or statements' includes actual, direct false statements as well as half-truths, and includes the knowing concealment of facts that are material or

---

[2] Paik was likewise acquitted of the criminal conflict of interest charge concerning the Thronas contract (count 8) and convicted of the criminal conflict of interest charge concerning the Kauai Fire Protection contract (count 9).

[3] In addition, the jury was instructed on a final element -- the use of the United States mails or a wire communication in interstate commerce. This element, clearly proven at trial, is not challenged in the Motion.

important to the matter in question and that were made or used with the intent to defraud."

B.   **Procedural Background**

Duarte timely filed his Motion on May 10, 2010. The United States filed its Opposition to the Motion on June 17, 2010. Although Duarte was granted leave to file a Reply by July 2, 2010, he failed to do so. After reviewing Duarte's Motion and the United States' Opposition, the court determines that this matter is suitable for disposition without a hearing. Local Rule 7.2(d).

## II.   STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 33, the court may grant a new trial "if the interests of justice so require." The court's power under Rule 33 is broader than its review of the sufficiency of the evidence under Federal Rule of Criminal Procedure 29. "The court is not obliged to view the evidence in the light most favorable to the verdict, and is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). The court may grant a new trial motion if "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred. . . ." *Id.* (quoting *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992)); *see also United States v. Pimentel*, 654 F.2d 538, 545

(9th Cir. 1981).  The defendant bears the burden of proving that he is entitled to a new trial under Rule 33.  *See United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

### III.  DISCUSSION

Duarte argues that he is entitled to a new trial because there was insufficient evidence to support his conviction.  Having reviewed the evidence, and based on the court's view of the credibility of both the government and defense witnesses, the court finds that Duarte has not shown that the evidence preponderates heavily against the jury's verdict.

The trial evidence established that Duarte "devised, or participated in, a scheme or plan for obtaining money or property by making false representations or statements," that he knew the representations or statements were false, and that the representations or statements were material.  *See* Jury Instruction No. 20 (Doc. No. 147).  These elements were proven by: 1) the government's "straw contractor" theory; 2) Paik's role in the Pond C contract; 3) Paik's receipt of funds from the Pond C contract; 4) and Duarte and Paik's failure to disclose Paik's involvement in the Pond C contract.   The court addresses each in turn.

First, the government's straw contractor theory was explained by Guy Menor, the owner of Kauai Fire Protection.  Menor credibly testified that Duarte,

who was not employed by Kauai Fire Protection, asked Menor to permit Duarte to use Kauai Fire Protection's license in order to bid on a contract involving work at the ponds. Duarte never told Menor how much Duarte bid for the job, and neither Menor nor Kauai Fire Protection were involved in either the administration of the Pond C contract or the work performed. Specifically, Menor credibly testified that: 1) he never saw the Kauai Fire Protection bid (Exhibit 16), which contained Kauai Fire Protection's license but Duarte's address; 2) he never saw the Ducks Unlimited contract with Kauai Fire Protection, signed by Duarte; 3) he never spoke to Fish & Wildlife employee Jack Palmer about the contract; 4) he never saw the September 20, 2005 or the January 1, 2006 Kauai Fire Protection invoices to Ducks Unlimited (Exhibits 6A and 7I); and 5) neither he nor any Kauai Fire Protection employees ever worked on the Pond C contract. Instead, Menor's role was limited to depositing the Ducks Unlimited payments (provided to him by Duarte), and then providing Duarte with the proceeds less taxes and insurance.

   Given this credible testimony, the evidence clearly established that neither Menor nor Kauai Fire Protection were acting in any capacity as a contractor on the Pond C job; instead, Kauai Fire Protection was a front for Duarte and Paik, not a legitimate contractor working on the Pond C project.

   Second, Paik's role in the contract further supports a finding that

Duarte and Paik jointly participated in a scheme to defraud. The evidence conclusively established that Duarte asked Paik to prepare the August 11, 2005 "K.F.P." bid in the sum of $23,500 for the Pond C grading contract. Exhibit 16. In fact, Paik prepared this bid, along with others, on his Fish & Wildlife laptop computer. Although Paik denied including the amount ($23,500) on the bid form, Duarte credibly testified that Paik included the $23,500 amount on the bid form.[4] Further, Duarte asked Paik to prepare a June 16, 2006 letter to Jack Palmer, stating, in part, that "I am owed a final payment of $5,875.00 along with the additional costs of $3,000 and expect payment promptly." Exhibit 7G. Finally, Duarte clearly understood Paik's role in the scheme. He asked Paik to prepare the original bid, and explained to Menor that Paik was his "partner" in relation to the Pond C bid.

Third, the evidence established that Paik benefitted from the Pond C contracts. That is, the evidence conclusively shows that after Duarte received payments under the Pond C contracts, he made cash payments to Paik. In relation

---

[4] Duarte initially testified that either Barbara Smith of Kauai Fire Protection included the $23,500 figure on the bid form, or that he had asked Paik to include that amount. The next day, however, Duarte testified -- truthfully in the view of the court -- that Paik placed the $23,500 quote on the bid form. Duarte also testified, however, that he provided Paik with the $23,500 figure to place on the bid form. After having observed the trial testimony, and after considering the credibility and sophistication of the witnesses, the court believes that it is much more likely that Paik, not Duarte, settled on the figure of $23,500.

to the Thronas contract, Paik received the following payments: 1) $7,000 cash on approximately September 22, 2005, within days of Duarte receiving funds from the contract; and 2) $2,000 cash on approximately October 27, 2005, within weeks of Duarte receiving funds from the contract.  Paik then received the following payments from Duarte in relation to the Kauai Fire Protection contract: 1) $4,000 cash on approximately November 1, 2005, within days of Duarte receiving funds from the contract; and 2) $2,000 cash on August 21, 2006, within days of Duarte receiving funds from the contract.  Paik also deposited $4,000 cash into his account on December 19, 2005, although the source of these funds may have been for matters unrelated to the Pond C contracts.

        The parties disagree, however, whether the payments to Paik were in fact proceeds from the Pond C contracts as a result of a Duarte/Paik partnership or simply constituted Duarte's share of the cost of a Takeuchi TL140 Track Loader (the "TL140") which was purchased jointly by Paik, Duarte, and Martin Fores.[5]  As an initial matter, the court agrees with the government that although a Duarte/Paik partnership was alleged in the "Ways and Means" section of the Indictment, the elements of mail and wire fraud did not require the government to

---

[5] The TL140 was purchased by Paik, Duarte, and Fores in June 2005.  According to Fores, each had the right to use the machine on their own respective jobs.  Duarte owed Paik for his share of the TL140, resulting in the defense argument that Duarte's payments to Paik represented Duarte's share of the TL140, not a sharing of partnership profits.

prove the existence of a partnership. And in fact the evidence conclusively showed that Paik did obtain money -- whether as partnership proceeds or as payment on the TL140 -- as required by the first element of mail or wire fraud. That is, regardless of any partnership, Paik benefitted from the Kauai Fire Protection Pond C contract because it provided Duarte with the means to pay the preexisting debt to Paik.

Nonetheless, the court believes that the evidence did establish, as alleged in the Indictment, the existence of a partnership between Paik and Duarte. Trial testimony established that Paik created, on his Fish & Wildlife laptop, an "Operating Agreement of Keahua Ranch LLC" ("Operating Agreement") on April 6, 2005, and printed on April 7, 2005. Although there was no evidence that the Operating Agreement was executed, it evidenced an agreement between Duarte and Paik (through his company Anini Landscaping LLC) to enter into a business relationship for money. Further, the Operating Agreement was drafted one month prior to the Thronas May 6, 2005 bid for the Pond C grubbing work, (Exhibit 12), and Paik and Duarte's subsequent conduct was consistent with the general terms of the Operating Agreement -- they worked jointly in an effort to obtain the Pond C Kauai Fire Protection contract.[6]

---

[6] The parties also dispute whether the amounts of cash that Duarte paid Paik are more consistent with a repayment of a loan or more consistent with the sharing of profits. Based on the evidence, the jury could certainly conclude that Duarte owed Paik approximately $10,000 for
(continued...)

Fourth, Paik failed to disclose his involvement in the Pond C contract to anyone in the Fish & Wildlife Service. In fact, rather than disclose his involvement, steps were taken to cloak the contract with an air of legitimacy by using Kauai Fire Protection as a straw contractor. As a result, Duarte and Paik created the illusion of legitimacy -- that the contract was let to a licensed contractor, when in fact it was the brainchild of Duarte and Paik, and was intended to benefit Duarte and Paik, not Kauai Fire Protection. In short, the trial evidence showed that Paik's financial interest in the Pond C contract was withheld from Fish & Wildlife Service. This non-disclosure was material -- had Paik disclosed his involvement, the Pond C clearing contract would not have been awarded to Duarte.

The trial evidence also circumstantially established that Duarte acted with the intent to defraud. Duarte entered into a contract with Ducks Unlimited under false pretenses -- he claimed to be a representative of Kauai Fire Protection when in fact he simply obtained Menor's approval to use the license number. Paik's involvement, including his financial interest, was never disclosed. Based on the totality of the trial evidence, a jury could easily conclude that Duarte acted with the intent to defraud.

---

[6](...continued)
the TL140 after Duarte made an initial $7,000 payment in August 2005; Duarte paid Paik at least $15,000, however, from Pond C contract proceeds.

## IV. **CONCLUSION**

Based on the above, the court DENIES Duarte's Motion for a New Trial.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 7, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Duarte,* Cr. No. 09-00129-02 JMS, Order Denying Defendant James Alan Duarte's Motion for a New Trial